IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRACY EARL HORRIE, JR. and JUDY HORRIE,

          Plaintiffs,

      vs.                                   NO:    1:13-cv-08161

A.W. CHESTERTON COMPANY, et al.,

          Defendants.

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR REMAND**

Plaintiffs, Tracy Earl Horrie, Jr. and Judy Horrie, through their attorneys Cooney and Conway, in support of their Motion for Remand, offer the following Memorandum of Law and Fact:

## I.      INTRODUCTION

The Plaintiffs filed this claim in Illinois State court alleging numerous defendants' tortious conduct proximately caused Mr. Horrie's malignant mesothelioma, a fatal cancer caused by exposure to asbestos. Mr. Horrie alleges his asbestos exposure occurred during several years in the U.S. Navy (1964 – 1968) followed by several decades of land-based civilian work in Illinois and secondary exposure via his insulator father during his childhood.

Defendant Crane Co. ("Crane") invokes federal officer and government contractor removal jurisdiction in this matter under the claim that any of Crane's asbestos-containing valves that Mr. Horrie alleges asbestos exposure to while in the Navy were designed and manufactured under the "Navy's direct and detailed control" and supervision. Crane claims this included

control of its ability to pass along warnings on its valves about the dangers of removing and

replacing asbestos gaskets and packing in their valves to end-users.

Crane's sole removal basis is the *Boyle v. United Technologies*, 487 U.S. 500 (1988)

defense, commonly referred to as the "Government Contractor Defense." Under *Boyle*, a

defendant must prove a direct conflict between its federal contractual duties and its state-law

duties. As it applies in this case, Crane must prove a direct conflict between its Navy contractual

duties and its duty under Illinois law to warn end users of asbestos hazards. The Plaintiffs' sole

Navy-related allegation against Crane is that Crane failed to warn him of the dangers of exposure

to the asbestos products contained in and on Crane's equipment. Warnings are not controlled by

federal contract specification and Crane cannot show any U.S. Navy requirement that forbade it

to warn of the dangers inherent to its product. As such, Crane cannot demonstrate a colorable

defense under *Boyle*.

## II.  *BOYLE*- "CONFLICT THERE MUST BE."

In *Boyle*, the Supreme Court held that contractors are immune only where there is

"significant conflict" between a federal interest and the requirements of state law. *Boyle*, 487 U.S.

at 511. Contractors have no blanket immunity from state law duties. Rather, "Displacement will

occur only where, as we have variously described, a 'significant conflict' exists between an

identifiable 'federal policy or interest and the [operation] of state law,' or the application of state

law would 'frustrate specific objectives' of federal legislation… But *conflict there must be." Id.* at

507.

There are three elements to the *Boyle* defense: "(1) the United States approved reasonably

precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier

warned the United States about the dangers in the use of the equipment that were [not] known …

2

to the United States." *Boyle*, 487 U.S. at 512. To invoke immunity, the tort duty must be "precisely contrary" to the contractual duty. *Boyle* explained that state law is not preempted if the "contractor could comply with both its contractual obligations and the state-prescribed duty of care." *Id.* at 509. In *Boyle*, Justice Scalia illustrated, "If, for example, the United States contracts for the purchase and installation of an air conditioning unit… a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary." *Id.* at 509. A contractor must identify "reasonably precise specifications" on the precise design feature at issue, to "assure that the suit is within the area where the policy of the 'discretionary function' would be frustrated." *Id. Boyle* held the government must actually consider and make a discretionary decision regarding the exact feature upon which state tort liability is grounded. *Boyle*, 487 U.S. at 512.

In this case, the feature in question is the lack of asbestos warnings. Crane must establish the Navy approved reasonably precise specifications that addressed the warning. There are no such "reasonably precise specifications." Crane could have supplied valves complying with Navy design specifications, *and* warned about asbestos as required by Illinois law. It is insufficient to show the Navy *could have* prohibited Crane from warning about asbestos. In *Boyle's* air-conditioning example, the Government could have specified the precise manner of construction. Nor is it enough to show the Navy accepted equipment that lacked an asbestos warning. In *Boyle's* air-conditioning example, the Government would have accepted the air conditioning unit without the safety feature required by state law. Rather, Crane must show that the Navy actually exercised its authority in a manner directly contrary to its tort-law duty to warn

about asbestos. Since Crane never contemplated, much less proposed asbestos warnings, the government never exercised discretion on Crane's ability to warn end-users about asbestos.

### A.     Crane's Evidence is Insufficient to Satisfy *Boyle*

Crane has no evidence supporting the first two elements. While Crane has provided general design specifications purporting to show that its equipment was military equipment and complied with design specifications, these specifications are silent on asbestos warnings. Since no precise specifications on asbestos warnings to end-users exist, Crane resorts to "expert speculation" that there must have been some unwritten Navy policy preventing manufacturers from warning end-users. In other words, Crane seeks federal jurisdiction based not on conflict with precise Navy specifications, but rather on inadmissible, unverifiable conjecture and speculation.

Expert opinions cannot be based on conjecture and speculation. *Porter v. Whitehall Laboratories, inc.*, 9 F.3d 607 (7th cir. 1993). Here, Crane's only evidence is the subjective belief and unsupported speculation of its hired experts that the Navy *would* have barred asbestos warnings on equipment *if* Crane had tried to warn. It has no facts to show that the Navy ever considered such warnings, or that Crane ever tried to give them. As explained in *Wagner v. Pennsylvania Railroad*, 282 F.2d 392, 395 (3d Cir. 1960), "Nothing in the factual background supported the premise of the hypothetical question… the question called not for an expression of expert opinion, but rather for mere conjecture as to what would have happened had a state of facts obtained that were different from those actually proved."

Moreover, the affidavits that support Crane's motion were produced before the Plaintiff was even diagnosed. They are generic affidavits used in other cases from other jurisdictions. Admiral Sargent did not begin service in the U.S. Navy until 1967, shortly before Mr. Horrie's

4

discharge.  He speculates that the Navy would not have 'permitted' equipment manufacturers to place warnings on their products in the 1940s, 1950s, or 1960s (Sargent Aff. at ¶¶ 63-66).  This same issue precluded another asbestos-defendant's expert affidavit in a similar removal action. *Westmiller v. Imo Indus., Inc.*, 2005 WL 2850334 (W.D. Wash.); See also *Sether v. Agco Corp.,* Civil No. 07-809-GPM, 2008 WL 1701172, at *4 (S.D. Ill. Mar. 28, 2008). Likewise, Dr. Forman's service began in 1973, yet Crane expects this Court to give weight to his personal experience with manufacturer warnings in the Navy decades before.  (Forman Aff.  ¶¶ 1-14 and 71).  Mr. Pantaleoni, Crane's corporate representative, offers no case-specific information nor does he offer any insight into the Navy's role in approving, preventing, or otherwise commenting on warnings for Crane's products other than to vouch that the products conformed to military specifications.

*Wyeth v. Levine,* 555 U.S. 555 (2009), is on point.  The defendant argued that its state law duty to provide stronger warnings was preempted because the FDA would have rejected stronger warnings.  *Wyeth* held that while the FDA retained authority to reject stronger warnings, the Court "cannot credit Wyeth's contention that the FDA would have prevented it from adding a stronger warning."  *Id.*  at 573.  The Court noted that the defendant had offered no evidence "that it *attempted to give* the kind of warning required by Vermont law but was prohibited from doing so by the FDA," *Id.*  at 572.  *Wyeth* held that "the mere fact that the FDA approved [the] label does not establish that it would have prohibited such a change."  *Id.*  Consequently, *Wyeth* held that the defendant had "failed to demonstrate that it was impossible for it to comply with both federal and state requirements."  *Id.*  at 573.  *Wyeth* is dispositive.  If speculation that the FDA would bar never-requested drug warnings does not pass Supreme Court muster, then speculation

the Navy would have barred never-requested asbestos warnings cannot support federal officer removal.

Similarly, in *Holdren v. Buffalo Pumps*, 614 F.Supp.2d 129, 137 (D. Mass 2009), the court was presented with the same evidence that Crane has offered here, including affidavits from Forman and Sargent. The Court determined these affidavits did not establish a colorable federal defense to an asbestos failure-to-warn claim. *Holdren* explained that the *Boyle* defense requires " 'some extrinsic evidence that the government exercised independent judgment' in such a way as to preclude the warning" which would otherwise be required under state law. *Holdren,* 614 F.Supp.2d at 143. The Court refused to infer such a conflict from the Navy's silence about asbestos warnings, reasoning, "It does not shield defendants where the government might have exercised its discretion and final authority but did not. Indeed, the purpose of both the federal officer removal statute and the federal contractor defense is to protect the execution of federal policies from state interference." *Id*. The Court continued, "If the government cannot be said to have made a decision—if it is simply silent—there is no federal policy or interest to protect. By default, any state-law duties thus remain intact." *Holdren,* 614 F.Supp.2d at 143.

The Court further explained "[t]he removing defendants have together submitted volumes of evidence seeking to show that the Navy would not have permitted them to warn about the dangers of asbestos, if they had tried. But the Court's decision rests ultimately on what is missing from the record." *Holdren*, 614 F.Supp.2d at 137. As here, the defendants in *Holdren* relied upon the affidavits to support the hypothetical proposition that the Navy would have prevented the equipment manufacturers from warning about asbestos, if such a warning had been proposed. *Id.* at 144. The affidavits filed in *Holdren* "expressed the opinion that 'the Navy would not have permitted Buffalo Pumps or other equipment suppliers to place asbestos-related

6

warnings on packaging or containers for pumps or related parts or items supplied during the

1940s, 1950s, or 1960s.'" *Id.* at 145. The *Holdren* Court found these affidavits speculative and

unsupported by documentary evidence. The Court noted that in fact, the military specifications

governing defendants' products were "vague about the content of manufacturer warnings," and

actually indicated the Navy's intent to accept commercial-type manuals when possible. *Id.* at

146.

## B. Historical Documents Show Naval Policy Allowed State Law Warnings

### 1. Military Specifications Authorized Warnings About Harmful Dust In Accordance With State Law

The Navy expressly allowed manufacturers to provide warning labels in accordance with

commercial practice and state law. The Navy's standard on labeling, MIL-STD-129, applied to

pumps, valves, gaskets, and packing for Navy use. In looking at both Crane and other Defendant

manufacturers dealings with the U.S. Navy, it becomes clear that the Navy never prohibited

manufacturers from warning of the dangers of their products.

MIL-STD-129 instructed Navy contractors to label hazardous chemicals in accordance

with the Manufacturing Chemists' Association guide, WARNING LABELS: A GUIDE FOR THE

PREPARATION OF WARNING LABELS FOR HAZARDOUS CHEMICALS, MANUAL L-1 (the "Manual L-

1"). *See* Exhibit 1, Manual L-1, 1956 ed.; Exhibit 2, "Military Standard: Marking For Shipment

and Storage," *MIL-STD-129B (1957)* at ¶ 2.2.10.4.3, Exhibit 3, *MIL-STD 129C (1960)* at ¶

5.2.2.4. Manual L-1, in turn, stated that all chemicals that generate "harmful dusts" should have

a caution label stating "Hazardous (Harmful) dust," "Harmful if inhaled," and "Do not breathe

dust." Exhibit 1 at 16-17. Moreover, Manual L-1 specified that the "*warning labels suggested in*

*the Manual should be used in addition to, or in combination with, any label required by law*"

7

including the laws of "State and local governments . . ." Exhibit 1, Manual L-1, at 6. (Italics in original). Crane's principal factories and business were located in Illinois from 1865 until 1985, and were subject to all of the requirements of the Illinois Health and Safety Act as an Illinois manufacturer. The Health and Safety Act applied to all employers engaged in any occupation, business, or enterprise in Illinois. Part J of the Act applied to the "Labeling in the Use, Handling and Storage of Substances Harmful to the Health and Safety of Employees". (Part J, Illinois Health and Safety Act, attached as Exhibit 4).

The Rules required that all containers of substances known to constitute a health hazard be properly labeled to safeguard employees working with such substances. The Act expressly covers all containers, including bags or boxes that contained dusts known to constitute a health hazard. The Act specifically mandated what the warning label needed to include: (1) The name of the product; (2) A signal word designating the degree of the hazard—"DANGER", "WARNING", "CAUTION"; (3) Affirmative statements of the hazards; (4) Precautionary measures covering actions to be followed or avoided; (5) Instructions in case of contact or exposure, where advisable; and (6) Instructions for handling and storage of containers. Specifically among the precautionary measures to be included on a warning label were the words AVOID BREATHING DUST (Part J, section 4, 1 (d)) when dust was the hazardous element. Crane Co. followed none of these regulations.

Thus, the Navy's own specifications on labeling allowed contractors to warn in accordance with Manual L-1, which instructed manufacturers to warn about hazardous dusts as required by state law. This directly contradicts the speculation of Crane's experts that the Navy would not allow contractors to warn about asbestos, a hazardous chemical that generates harmful dust. Moreover, the U.S. Government's official position in litigation is that MIL-STD-129

8

permitted Navy contractors to warn about asbestos.[1] GAF Corp. sued the United States in 1983 "for implied contractual indemnification for damages sustained as a result of actions by or on behalf of shipyard workers to recover for injuries or death due to exposure to asbestos." *GAF Corp. v. United States*, 19 Cl. Ct. 490, 490-91 (Cl. Ct. 1990), aff'd, 931 F.2d 947 (Fed. Cir.), cert denied, 502 U.S. 1071 (1992). GAF asked the United States to admit in discovery that "[a]t no time prior to 1964 did the defendant's Specification for Marketing for Shipment and Storage (MIL-STD-129) permit the placement by plaintiff of a label or marking concerning the hazards known to defendants regarding exposure to asbestos dust." The United States responded: "MIL-STD-129 speaks for itself, and the United States denies." (Exhibit 11, Discovery Responses in GAF v. United States.)

The Federal Circuit recognized that "nothing in the contract specifications prevented Ruberoid (GAF) from putting warnings on its products. These asbestos supply contract specifications, whether design or performance, did not cause Ruberoid's tort losses." *GAF Corp. v. United States*, 923 F.2d 947, 950 (Fed. Cir. 1991).

### 2.    Military Specifications Allowed The Same Warning Labels As Those Placed On Commercial Products

Navy documents confirm that Navy policy left it to manufacturers' discretion to warn about hazardous chemicals as required by state law. In SECNAV Instruction 5160.8, the Secretary of the Navy discussed the Navy's 1956 "Uniform labeling program for hazardous industrial chemicals and materials." Exhibit 12, Dept. of the Navy, SECNAV 5160.8, 9/24/56.

---

[1] The military also incorporated MIL-STD-129 — and, by extension, the ability to warn about hazardous dust in accordance with state law — into MIL-P-15024D, the military specification for "Plates, Tags and Bands for Identification of Equipment." Exhibit 5, MIL-P-15024D at 1, 3. DOD also incorporated MIL-STD-129 and/or MIL-P-15024 — and, by extension, Manual L-1— into virtually every military specification for pumps, turbines, and other asbestos-containing equipment. See, e.g., Exhibit 6—10.

This document states that the Navy's own labeling program was "not intended to govern … the type of labels to be affixed by the manufacturer, " and that manufacturers' warning labels were "governed by State and Federal laws and regulations" and the Warning Labels Guide published by the Manufacturing Chemists' Association." *Id.* Crane's expert David Sargent admitted in prior testimony that the specifications discussed above allowed manufacturers to include commercial warnings on their products. Deposition of David Sargent, dated 04-29-09, pp. 81, 89, 110 (Exhibit 13).

Manufacturers were given broad authority to include safety warnings in their Technical Manuals under MIL-M-15071C (1957), attached hereto as Exhibit 14. MIL-M-15071C provided that manufacturers' technical manuals should contain "WARNINGS" about maintenance procedures that could cause "injury to personnel or loss of life." Exhibit 14, p. 10, §3.3.3.2. The specification states that the Navy's "intent is to accept the manufacturer's commercial type of manual or one prepared in accordance with is commercial practice whenever it is roughly equivalent to the detail requirements included herein." Exhibit 15, MIL-M-15071D, at §1.1. MIL-M-15071 gave Crane the discretion to provide all necessary safety warnings to prevent injury or loss of life. MIL-M-15071 did not prohibit Crane from warning about asbestos as required by state law. Crane has no regulations, no specifications, no contract provisions, and no documentary evidence to support its contention that the Navy barred asbestos warnings.

### 3. Equipment Manufacturers Routinely Warned About Other Toxic Substances In Their Manuals

Crane's affiants assert that it would not have been permitted to warn about asbestos. They claim that Crane lacked the discretion to warn about toxic substances used on its equipment, because "the Navy simply could not operate safely and effectively if personnel . . .

10

were provided with inconsistent [safety] information received from different manufacturers."
[Sargent ¶61-66]. This is false and directly contradicted by the actual Navy technical manuals
attached hereto as Group Exhibit 16. The manuals show that manufacturers routinely warned
about toxic materials used by the Navy. These warnings varied widely from one manufacturer to
another, directly contradicting Sargent's unsupported assertion that the Navy had an unwritten
"consistency" policy. In fact, safety warnings in Navy equipment manuals were NOT uniform or
consistent. Some manufacturers gave detailed warnings about hazardous materials used on
equipment; others gave only brief, general precautions; and others provided no warnings at all.
The Navy accepted all of these manuals, whether the warnings were general, detailed, or non-
existent. Historical evidence does not support Crane's assertion that it lacked discretion to warn
about exposure to toxic substances.

### 4. Other Navy Contractors Warned About Asbestos With No Objection From The Navy

Ultimately Crane attached an asbestos warning tag to its valves in the 1980s to fulfill its
state-law duty to warn. Crane produced a copy of the warning tag in discovery. (See Exhibit 17
hereto). The tag said "CAUTION: Contains Asbestos Packing or Gasket." Harry Farley,
Crane's former director of engineering, testified Crane warned about asbestos due to concerns
about asbestos exposure. Deposition of Harry Farley dated 05-18-2004, at 65:1 to 65:16.
(Exhibit 18 hereto). Farley explained that the asbestos warning was intended "to fulfill the
'failure to warn' clause in many state product liability statutes." Exhibit 19 hereto, at CRHI
3075. Farley also testified that Crane sold asbestos-containing valves to the Navy during his
tenure. Exhibit 18 at 82:23 to 83:18. Martin Krafft, the corporate representative of Buffalo
Pumps(another equipment manufacturer with extensive Navy sales) testified that (1) Buffalo

provided an asbestos warning with its Navy pumps in 1987, (2) Buffalo made the decision to

warn about asbestos of its own accord, and (3) no such warning was dictated by the Navy.

Exhibit 20, Deposition of Martin Kraft, dated 03-15-2006, at 150-51. Kraft also testified that he

had no evidence that the Navy constrained Buffalo Pumps from warning about asbestos. Exhibit

21, Deposition of Martin Kraft, dated 11-30-2006, at 133-35.

## III.    THERE IS NO CAUSAL NEXUS UNDER *MESA*

Because Crane's failure to warn about asbestos was not caused by the Navy, it cannot

satisfy the causation requirement mandated by *Mesa v. California*, 489 U.S. 121, 109 S. Ct. 959,

103 L. Ed. 2d 99 (1989). Under *Mesa*, a removing defendant "must show that the specific acts or

omissions complained of were committed pursuant to a federal duty." Crane's only "evidence"

on causal nexus is expert speculation that hypothetically *if* it tried to warn, the Navy would have

barred warnings. Since Crane never tried to warn and never warned commercial consumers, its

failure to warn has no causal connection to any federal duty. Thus, Crane fails to establish the

causal nexus required by *Mesa*. Crane's only evidence of "conflict" and "causal nexus" is

hypothetical – if Crane had tried to warn, the Navy would have said no. The Supreme Court has

held "a federal court may not hypothesize jurisdiction." *Ruhrgas v. Marathon*, 526 U.S. 574,

577 (1999).

## IV.    THE GOVERNMENT CONTRACTOR DEFENSE IS NOT NOVEL

The federal contractor defense has already run through the trial and review cycle

described in the Manual for Complex Litigation.[2] The argument is evidently going through

---

[2] According to the Manual for Complex Litigation, 4th edition, "In a typical mature mass tort, little or no
new evidence is likely, appellate review of novel legal issues has been completed, and a full cycle of trial
strategies has been explored."

another cycle inasmuch as numerous removals based upon §1442 and *Boyle* have occurred in the past four years, and countless remands have been granted. Some of the decisions have held that there is no jurisdiction; others have found that the defendants have met their initial jurisdictional burden. Asbestos litigation is a mature tort by this definition. Had a colorable government contractor defense existed, asbestos lawsuits alleging exposure while in the US Navy would have been extinguished sometime in the twenty-five years since *Boyle v. United Technologies*, as part of the maturation process of this tort. That has not occurred. The government contractor defense went through the trial and appellate process, and was soundly rejected.

In the landmark asbestos case of *In re Joint E. & S. Dist. New York Asbestos Lit*., 897 F. 2d 626, CA, 2nd Cir. (1990), the Second Circuit Court of Appeals, the Court found the defense inapplicable: "Stripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.' " The Court explained that "*Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion."

Even before *Boyle,* asbestos defendants attempted to use the government contractor defense and/or sought third party indemnification from the United States government on the basis that they were only following orders. The defense was argued in both state and federal courts of review, and was found meritless. For example, in *Lopez v. Johns-Manville*, 649 F. Suppl-149-Dist. Court, WD Wash. 1986, affd. *Lopez v. AC & S., INC.*, 858 F. 2d 712, C.A, Federal Circuit 1988, the Court denied the strategies and granted summary judgment for the plaintiff, a shipyard worker**.** Similarly, in *Hammond v. North American Asbestos Corp.*, the

13

Illinois Supreme Court held that such a defense brought by an asbestos fiber seller was inapplicable as a matter of law. *Hammond*, 97 Ill. 2d 195, 208 (1983) (holding that the trial judge correctly ruled the military specification did not preclude defendant from placing a warning on the bags and therefore as a matter of law this was not a defense to plaintiff's action.) Within this circuit, the District Courts have addressed the issue a dozen times in the past five years, and the decisions vary.[3] In ten cases, the district court remanded the cases, holding there was no federal jurisdiction. In two cases, the district court found jurisdiction and denied the plaintiffs' motions for remand.

## V.   *RUPPEL V. CBS CORP.* IS DISTINGUISHABLE

*Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012) is the only Seventh Circuit Court of Appeals decision in the asbestos litigation context. In *Ruppel*, CBS/Westinghouse, the removing defendant successfully appealed the district court's remand. The *Ruppel* court found under very specific circumstances the federal contractor defense may apply to a failure to warn claim. It is important to note, however, that *Ruppel* involved a very dissimilar factual situation than the instant case. Mr. Ruppel worked for Westinghouse and a subsidiary at nuclear propulsion laboratory jointly created by the Navy and Energy departments to develop nuclear powered

---

[3] In *Perakslis V. 3m Co.*, Civil No. 11-1111-Gpm (S.D. Ill. Jan. 13, 2012); *Adams V. Armstrong International, Inc*, Civil No. 11-857-Gpm (S.D. Ill. Jan. 10, 2012); *Sublett V. Air & Liquid Systems Corporation*, Civil No. 11-433-Gpm (S.D. Ill. June 30, 2011); *Baker V. Air & Liquid Systems Corporation*, Civil No. 11-8-Gpm (S.D. Ill. Feb. 7, 2011); *Kuhlman V. Aw Chesterton, Inc.*, Civil No. 10-119-Gpm (S.D. Ill. Mar. 9, 2010); *Rinier V. Aw Chesterton, Inc.*, Civil No. 09-1068-Gpm (S.D. Ill. Jan. 19, 2010); *Stephens V. Aw Chesterton, Inc.*, Civil No. 09-633-Gpm (S.D. Ill. Oct. 22, 2009); *Gragg V. Alfa Laval, Inc.*, Civil No. 09-773-Gpm (S.D. Ill. Nov. 20, 2009); *Glein V. Boeing Company*, Civil No. 11-47-Gpm (S.D. Ill. Feb. 8, 2011) and *Vickroy V. Aw Chesterton, Inc.*, Civil No. 11-531-Gpm (S.D. Ill. Sept. 28, 2011) the Courts remanded the cases, holding that there was no federal jurisdiction. However, in *Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985 (C.D. Ill. 2011) and *Harris v. Rapid American Corp.*, 532 F. Supp. 2d 1001 (N.D. Ill. 2007) the Courts found jurisdiction and denied the plaintiffs motions for remand.

turbines. The subsidiary of Westinghouse for which Mr. Ruppel worked had no customers other than the United States government and no purpose other than to help design nuclear systems for the government. There, the defendant provided documents specifically relating to the work it performed for the United States Navy. The documents and affidavits clearly indicated that the subject turbine at issue was custom made and not a stock item otherwise available commercially. In this case, Crane sold the same "stock" valves to all of its customers, including the Navy. The unique circumstances in *Ruppel* are materially distinguishable from the circumstances and evidence provided in the present case.

Wherefore, for all of the reasons stated above and in their Motion for Remand, Plaintiffs request this Honorable Court to enter an order remanding this cause to the Circuit Court of Cook County, from whence it was improvidently removed.

Respectfully Submitted,

/s/ Charles A. Porretta
Charles A. Porretta

Charles A. Porretta
Robert Cooney, Jr.
Kathy Byrne
COONEY & CONWAY
120 N. LaSalle St., Suite 3000
Chicago, Illinois 60602
(312) 236-6166
cporretta@cooneyconway.com