**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **TRACY EARL HORRIE, JR. and JUDY HORRIE,**<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>**A.W. CHESTERTON COMPANY, *et al.*,**<br><br>　　　　　Defendants. | **Case No. 13 C 8161**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

**I.　BACKGROUND**

In their first amended Complaint, filed in the Cook County Circuit Court, the Plaintiffs allege that numerous Defendants' tortious conduct proximately caused Mr. Horrie's malignant mesothelioma, a cancer caused by exposure to asbestos. He alleges that his exposure occurred during several years (1964 to 1968) in the United States Navy, where he served in various capacities including Machinist Mate, which was followed by several decades of land based civilian work in Illinois, as well as secondary exposure via his father who was engaged in insulator work during his childhood. In an exhibit to the Complaint, he alleges that, while in the Navy, he was stationed at San Diego, California, Great Lakes, Illinois, and aboard the U.S.S. Taussig and the U.S.S. Frank Knox. Plaintiffs filed this suit for damages claiming that a host of entities for whom he worked or who provided products exposed him to asbestos which in turn caused him to incur his illness. The Defendant, Crane Company ("Crane"), is

alleged to have supplied valves containing asbestos to the United States Navy which were used in constructing the ships upon which he served. The Plaintiffs rely solely on the alleged failure to warn him of the dangers of asbestos.

## II. DISCUSSION

Crane filed a notice of removal to this court. The Plaintiffs have moved to remand based on a lack of diversity jurisdiction. Crane however contends that it is entitled to remove based on the government contractor defense. This defense had its genesis in *Boyle v. United Technologies Corp.,* 487 U.S. 500, 504 (1988). The issue in *Boyle* was whether, in the government procurement area, state tort law could be pre-empted. The Supreme Court held that in the procurement of equipment the federal government's interest, even though the case was between private parties, could dictate that case be tried under federal rather than state tort law. The court went on to hold that such displacement would only occur where there is a significant conflict between the federal interests and state law. That is, the conflict must be such that by performance of federal contract obligations, a contractor may be exposed to state tort liability. If, however, the performance of federal contractual obligations would not conflict with state law, then the defense would not be applicable.

The application of the government contractor defense in failure to warn claims such as present here was discussed in *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 1003 (7th Cir. 1996). The court

began its discussion by noting that this defense may operate to defeat a state failure to warn claim, citing *Butler v. Ingalls Shipbuilding, Inc.,* 89 F.3d 582, 586 (9th Cir. 1996) and *In re Joint Eastern and Southern Dist. New York Asbestos Litigation,* 897 F.2d 626, 629 (2d Cir. 1990). However, it was "well established" that a defendant may not defeat a state failure to warn claim simply by establishing the elements of the government contractor defense with respect to a design defect claim. To be entitled to this defense the contractor must establish that (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; and (3) the contractor warned the government about dangers in the equipment's use that it knew about but the government did not.

In order to comply with the first factor, the contractor must show that it complied with a "reasonably precise specification" imposed on it by the government procuring agency and that this specification was in conflict with state tort law.

In attempting to establish the government contractor defense Crane has supplied the court with affidavits from Anthony D. Pantaleoni ("Pantaleoni"), Crane's Vice President of Environment, Health and Safety since 1989, and James M. Gates ("Gates"), former manager of Design Verification of the Marine Division of Westinghouse Electric Corporation, who began working for Westinghouse in 1953. Pantaleoni stated that Crane "made and supplied equipment, including valves, for Navy ships under contracts between Crane Co. and the

shipyards and/or United States of America, specifically the Navy Department" and the "manufacture of equipment . . . was governed by an extensive set of federal standards and specifications, chiefly military specifications known as "MilSpecs." He further attested that "the equipment supplied by Crane Co. to the Navy was built in accordance with the Navy specifications." He, however, provided no specifics. Gates attested generally concerning the level of supervision and control exercised by the Navy over the design and manufacture by Westinghouse of turbines, turbine-generators, propulsion equipment and auxiliary equipment intended for installation on Navy vessels generally. Much of his affidavit concerns specifications for the manufacture of equipment although he did state with respect to warnings or caution plates that "some naval equipment, such as main reduction turning gears, have warnings or caution plates, which are in standardized format and set by the Navy. Under both the specifications and regulations, and in practice, the Navy had ultimate control over the nature of the warnings communicated to the Navy . . . personnel in relation to shipboard equipment and materials."

The problem with Crane's supporting documentation is that it is completely short of specifics applicable to this case. All we know for sure is that Crane at some time supplied the Navy (or a Navy contractor) with valves which were incorporated in the construction of Navy vessels. A valve is a device that regulates, directs or controls the flow of fluids by opening, closing, or partially

obstructing various passageways. Valves vary widely in form, size, and application. *See, http://en.wikipedia.org/miki/ valve.* Crane has not produced any contracts under which it supplied valves or anything else to the Navy. It has not established that the navy made any specific requirements as to warnings or prohibited any specific warnings for any valves it may have obtained from Crane. And it has not established that, if there were in warning requirements of the Navy, that they conflicted with Illinois tort law. Its witness, Pantaleoni, did not work for Crane at the time the products were manufactured and did not state what efforts he undertook to find actual documentation.

Nevertheless, Plaintiffs contend that *Ruppel v. CBS Corp.,* 701 F.3d 1176 (7th Cir. 2012) requires that the Court accept jurisdiction in this case. In *Ruppel,* the plaintiff brought a state court action against CBS, a government contractor, alleging that he developed mesothelioma due to his exposure to asbestos in turbines Westinghouse (CBS's predecessor in interest) supplied to the Navy prior to his Naval service. CBS removed the case to federal court. Ruppel moved to remand and the district court granted the motion without giving CBS a chance to respond. The district court concluded mistakenly that the suit only involved failure to warn and since the Navy did not preclude adequate warnings the defense was inapplicable. The Seventh Circuit reversed finding that CBS had a "colorable argument for the government contractor defense. . . ." CBS provided materials that supported its assertion that the Navy required CBS to use

asbestos, that the Navy controlled the content of the warnings, and the Navy knew of asbestos health risks. These materials included the affidavit that plaintiffs filed in this case from Gates which was created specifically for the *Ruppel* case, as well as the actual purchase order and the MilSpec that applies to permissible content of manuals, including warnings, all of which is lacking in this case. In this case, the record is silent as to whether Crane was permitted to warn and, if so, whether any such warning would conflict with state law. Accordingly, the Court finds that *Ruppel* is inapplicable.

### III. CONCLUSION

For the reasons stated herein, the Court grants the Plaintiffs' Motion to Remand to the Circuit Court of Cook County.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

Date:5/19/2014